at all. Arguments not to exceed 15 minutes aside. Ms. Henderson for appellants. Good morning. Good morning. I hope it's still morning. Yes, it is. May it please the court. Callie Henderson for defendants Abdallah and Smith. May I please reserve three minutes for rebuttal? Yes. Thank you. Now, this case presents critical issues concerning qualified immunity, constitutional principles, and evidentiary principles. We believe the district court made three main errors in regards to improperly considering the testimony of Beria Stewart and then wrongly analyzing the fabrication claims under the 14th as opposed to the Fourth Amendment and denying qualified immunity to the officers despite there being no case law that their interview techniques were unconstitutional. In fact, they're being case lawed to the contrary. So this is an appeal on your two officers' counts of the denial of qualified immunity. So we have very limited jurisdiction. It's an interlocutory appeal, right? It is an interlocutory appeal of the qualified immunity issues as well as the, which I think encompasses all of these, because these are all legal issues that underlie the determination of qualified legal issues if you concede all the facts in the light most favorable to the plaintiffs, right? Yes, and I believe we've done that, Your Honor. We're not disputing... How can you be challenging evidentiary rulings of the district court? I believe it's what was proper for consideration at the summary judgment stage. Does Rule 56 allow the district court to consider testimony that is not admissible? Testimony has to be ... It doesn't have to be admissible in that form, but the plaintiff has to be able to show that it will be admissible. And that's what we're challenging in regards to the testimony of Beria Stewart, because she did not testify in this case. She would not appear to testify, and I believe she's now deceased. And so that's really the challenge in regards to her testimony is, can her prior transcripts... Can absolutely everything of hers that was admitted was erroneous, or are you looking at something specific? I'm looking at relying on her prior testimony. Yes, that is what I'm challenging, her prior testimony, because that is what the plaintiff is relying on under 804, is that when she testified in the criminal proceedings, the prosecution had the same motives to cross-examine her such that now that she is unavailable, her transcripts can be used against the defendants in this case. And that's what we're saying. No, 804 doesn't apply here. Prosecutors did not have the same motives as the officers now in this case. Therefore, under 56, there's no admissibility to these transcripts because she cannot show up and testify anymore. You cannot consider what she said in those criminal cases. Do you have examples of where... I always thought it was as long as you had an opportunity to cross-examine the witness before that suffices. Where does this motive point come in? Do you have some case laws saying that? That's specifically the rule for 804 and what the case law holds, because yes, someone had to have cross-examined, and 804 holds that that person that cross-examined... I have regrets all the time when I was in practice that I learned something later that I could have cross-examined, but that wasn't a reason why you couldn't still use the prior cross-examined testimony because maybe you later would have had a different reason for wanting to cross-examine them. But it seems like to me, as long as you've had the opportunity under the rule, you're... Well, that's our point, actually, Judge Bush, is that we didn't have the opportunity to cross-examine her. That was the prosecutors. And in that case, the prosecutors representing the people of the state of Michigan. They're not representing these two officers as to their specific conduct, such that they didn't... These two officers never had the opportunity to cross-examine her into what she's saying about them. And that's where I think 804 has that intention rule. Did that person then develop the same testimony? Then the question becomes, is this really proper as an evidentiary ruling for us to consider in reviewing a denial of qualified immunity, given that we have to accept the facts of the plaintiff in order to do this? Isn't this part of the facts that we need to accept under that provision for interlocutory review? No. And I think that that's where Rule 56 draws that as a fair question, is, is this proper evidence that the plaintiff can rely on? And that's what we're asking this court to say, is whether this was proper for the court to rely on this? Because if this court says, yes, Rule 804 allows the admission of this testimony, then it was proper for the district court, and it can be part of what plaintiffs present, and we can't challenge it at that point. But what we're saying here is, that's an incorrect conclusion. 804 doesn't allow that admission. It cannot become part of plaintiff's facts that have to be accepted. It shouldn't have been considered at all. That's the first misstep. You have a case, we're really struggling with this Johnson v. Jones question about whether we have jurisdiction to consider your argument, which sounds like an evidence-based argument, as opposed to accepting the plaintiff's facts, and then going forward with, was there a constitutional right alleged that was deprived, and was that right clearly established? So, what case would you rely on to say that on interlocutory appeal, we can consider an evidentiary ruling by the district judge? Because most of our interlocutory qualified immunity cases seem to say that we have the defendant police officers saying, we accept the facts alleged by the plaintiff, who's saying that their constitutional rights were violated. We accept the facts that they tell us about, you know, in an excessive force case, how they were beaten by the police officers. We accept those facts, and then we decide, was their constitutional right violated, and if so, did it, was that right clearly established? Well, and I would direct the court to Sigler v. American Honda Motor 532F3D469, and I don't believe it discusses it in the context of qualified immunity being interlocutory, but it does say that objecting to the use of the evidence preserves the issue for the ultimate summary judgment appeal, and I think here, when that evidence underlies... Just by the name of that case, versus Honda Motor, that's not a qualified immunity case. Correct. I'm not trying to suggest that it is. I think the fact that it preserves it for the appeal, then when we're looking at what facts are proper for the district court to have considered for qualified immunity, we have to look at what Rule 56 allows. Because Rule 56 says, what can the district court look at for summary judgment at that phase? And that's what we're saying, you haven't met the... Okay, let me just ask you this. Do you have to exclude the steward's trial testimony in order for your arguments for qualified immunity to succeed? No, Your Honor. Okay, well then let's proceed on. That's what I wanted to jump to, because I think when we talk about the fabrication issue, it does encompass several of these, even if we take Beria Stewart's testimony for what it is. The real challenge to Beria Stewart's testimony, as well as Weissman, is that she was pressured into saying what she did. Now, we challenge that on multiple grounds as well. There's three. I want to jump to first the idea that this is a proper fabrication claim, because I think that that flies in the face of what the Supreme Court has directed. It's being treated in this case as a 14th Amendment claim. And I recognize there is an opinion from June of this year, Judge Bush participated in Hoskins v. York that said, well, yes, sometimes maybe there is a separate evidentiary claim or a fabrication claim under the 14th if it was decided in that case. And in all of the cases where this has been raised and a fabrication claim has been discussed, it's always been presumed without addressing that this is the proper amendment. And the Supreme Court has specifically said that the 14th Amendment does not provide sufficient guideposts. So when there is an amendment that specifically addresses the conduct at issue, that's where we need to analyze this claim. And the Supreme Court is going to challenge a pretrial deprivation of liberty, we're looking at the 4th Amendment. Fabrication, we're looking at the 4th Amendment. And that's exactly what plaintiff is challenging here. Plaintiff says, whether it be fabrication or malicious prosecution, they're the same. You didn't have probable cause to arrest me because you coerced Beria Stewart into giving you this statement. You fabricated that. Is there no question of fact underlying that? No. No, Your Honor, I don't believe there is. Because here we have the audio of her interviews. We have the video of her interview. These things are things that plaintiff had back then. So what we're looking at here really is the legal question of, can you have a fabrication claim based solely on pressuring the witness? So even if we are to presume, I'll go so far as to say if we want to presume that this is a valid claim, like several courts have done, then it has to be, it's been defined as a knowing fabrication, right? The officers have to know what they did. And here, where you're just exerting pressure, it's the same reason that we have said a coercion claim is separate because a coerced statement can still be a true statement. So the fact that we're now saying that just merely coercing her into something means you knew that that was a false statement, I think violates those prior principles in regards to coercion. And plaintiff is really trying to turn a coercion claim that doesn't, he wouldn't have because that would be the witness's claim, into a claim here for fabrication. And it just does not fit. And there's no case law that would have even, when we turn to the clearly established prong, told the officers, these techniques that you're using back then when you're using them, these are coercive, you cannot use them. That didn't exist. So they didn't even know that what they were doing at that time was coercive, yet alone that now they're also knowingly fabricating evidence just because they're putting pressure on someone to give information. And I think the standard that the plaintiff is asking for sets a very dangerous standard for law enforcement conducting interrogations. And I see that my time has expired, so unless the panel has any questions, I will yield. Thank you. Good morning, Your Honors. Morning. May it please the Court, Wolf Mueller on behalf of the plaintiffs. I want to just touch very briefly on this hearsay issue. I don't think there is grounds to address it in this appeal which is limited to qualified immunity. And as the appellants admitted, it doesn't depend on the analysis of the fabrication of evidence. So I want to talk about the fabrication of evidence and first the Beria-Stewart interrogation, which we need to address that in the context of the audio tape, the video tape, and importantly, the 40-minute gap between the two segments of the interrogation. As you've seen, I don't need to repeat it over and over, 26 different times she said, I don't know anything about this case. As the district court said, her descriptions were wildly inconsistent. Then there's a 40-minute gap, and after all these threats of going to jail and taking away your kids, there's a 40-minute gap. Then all of a sudden there's a cohesive story. So we need to look at not only was it threats and coercion which caused that with a vulnerable person who, as you read the transcript, Abdallah knew she was a drug addict. He accused her of being on cocaine and all that. It's obvious. So we have that. And then the district court also said, not only that, but as you go to the preliminary exam, remember, under Skousen v. Brighton High School, under Ehlers-Wieskebel, an identification is presumed reliable unless the officers know or have reason to know that it's false. And in this case, by the time of the preliminary exam, we had not only the threats and everything we talked about with the interrogation, but as the court recognized, you have an alibi witness now to Rhonda Moore. We'll talk more about her, which would cut against the reliability of Beria-Stewart. And importantly, Abdallah admitted at his deposition he was aware of the autopsy. Remember, the story that was the cohesive story that got presented at the preliminary exam is that both of these men beat the victim in the face repeatedly. Abdallah knew that this autopsy didn't show any injuries to his face. And I want to quote from 153.3, page number 495.2, which is 130 of his deposition. At some point in time, you certainly learned that the autopsy report was inconsistent with her story in terms of the facial injuries, correct? I believe so. Okay, which would have given you cause for pause in terms of the reliability of the story. Isn't that true? And he answered yes. So did he know or have reason to know that her story was false? Of course he did. We have external inconsistency in everything, and looking at the prior interrogation, we have internal inconsistency as well. Is this simply a coercion case, or does it move further to be a fabrication of evidence? It's certainly coercion, but I think it also becomes a fabrication of evidence, because fabrication, by definition, is to manufacture, to create something that did not exist. And that story, through the coercion, through the threats, did not exist. And as a fabrication, yes, he knew or had reason to know that it was false. Did you present this in the district court as a Fourth Amendment case, or as a due process? I'm certain, I don't have the amendment complaint, but it's certainly, I know what I do, is Fourth and Fourteenth Amendment, because as Manuel v. Joliet said in footnote 8, Fourth Amendment is pretrial. As you get to trial and past that, it's a due process violation. So I certainly pled the Fourth Amendment in a fabrication claim. And as I read the brief, I thought she's talking about malicious prosecution, because she mentioned probable cause. Well, in a fabrication claim, lack of probable cause is not an element. So to that extent, certainly we have the fabrication of Barry Stewart. I want to talk about Tammy Wiseman, which is important, because it gets to the same type of thing that he did with... Just so I understand your theory, I'm thinking back to the Jackson case, where in that case, the detective actually helped prepare this false statement that was signed by the witness. So in that sense, they truly were fabricating something tangible that was a false statement. Here, it's more, it's not quite to that extent, because you've got your hearing testimony from Stewart, but you have all this circumstantial evidence. I guess you're saying that maybe during the 40 minute gap, there was a coaching in that period? Is that what you're saying? Most certainly, because in light most favorable, and I want to address one point with respect to the video and audio tape. As we know, and I want to cite Gordon v. Baringa, Sixth Circuit case from 2021. It says, if a video, in that case, can be interpreted in multiple ways, or doesn't show all the relevant facts, then you interpret everything in the light most favorable to the non-moving party. In this case, a reasonable jury certainly could look at the before, and the wild inconsistencies, a 40 minute gap, and then a consistent, cohesive story which now ties in some of the physical evidence. Remember, I cited where Abdallah had been to the apartment, and knew physically Barry Stewart couldn't see what she said she saw. So all of a sudden, that got cleaned up, and a reasonable jury could certainly infer in that 40 minute gap, there's more threats and more coaching. Because all of a sudden, it's a very clean, consistent story. So yes, that's to answer your question. It is akin to Jackson. And then the other evidence you've got is when they later find out from the autopsy and the alibi witness that there's some, that's inconsistent. Although I'm concerned that that may be just, I mean, any time in a prosecution, you may have inconsistencies of witnesses, but that doesn't necessarily mean one witness is, you can't necessarily tell which one's telling the truth, necessarily, right? I mean, one could be lying, the other one telling the truth. Stewart could have been telling the truth, the other one could have been lying, possibly. With respect to Moore and the alibi, certainly. But as you look at Barry Stewart's story, a critical component was that both of these men were beating the victim in the face. So that's directly contradicted by the physical evidence, and that's why it should have known. All right? So, and I think akin to Jackson, Jackson, the witness, signed the statement. So it did adopt the version, yes, was it physically prepared by the police? Yes. But I think it's equivalent in this case. So I want to talk about the malicious prosecution we've talked about. Oh, with respect to malicious prosecution, there are questions of fact as to probable cause. Because if you find the fabrication, question of fact, which the district court did, then there's a question of fact as to probable cause. And certainly, we know that the police action and the fabrication influenced the initiation of the prosecution, because Barry Stewart was the entire case. So as to fabrication of Tammy Wiseman, it's the same number of threats, jail time with respect to your kids, and paying $500 once she signs a statement that basically impugns the attorneys and the clients, because they're witness tampering. They're suborning perjury. They wanted me to say that I was with Barry Stewart, which is the first story she told Abdallah. So in terms of that, that's the same type of coercion with the quid of the money for the illegal quo, which is the false statement. So we have that. And with respect to the state law claim for fabrication for malicious prosecution, one, we have the question of fact as to probable cause. I cited the Renda case. And two, malice, evidence of fabrication is evidence of malice, as the district court said, citing Halsey v. Pfeiffer. So is every fabrication case a malicious prosecution under state law, then? I think, depending on the facts of the fabrication, but fabrication being a knowing act of falsifying some evidence is evidence of malice. And if it is significant to probable cause, in this case, it was, because she's the only witness. So in this case, it certainly is. It's evidence of malice, and it's evidence of lack of probable cause. And Halsey v. Pfeiffer said that when it said, it is inconsistent with any concept of ordered liberty for law enforcement to cook up its own evidence to manufacture probable cause. So that certainly is evidence of malice. I want to talk about the Brady claim. I have five minutes left, and it's very important. I think it's a significant claim against Abdallah for these reasons. Beria Stewart is the only witness in the case to implicate the plaintiffs. So anything that cuts against her credibility would be material. And anything under Kiles v. Whitley, the Supreme Court case from 1995, that calls into question the thoroughness and the good faith of the investigation would be material. Here, we've talked about Tammy Wiseman and the $500. There's the Sixth Circuit case, which is Robinson v. Mills, 592 F. 3rd, 730 from 2010, where it was found to be material Brady evidence and warranted a habeas grant, where it wasn't disclosed that a key witness had gotten paid. Same thing here. Wait a minute. But what here wasn't already known to the defendants at the point of trial? How is this? There's misconduct here. I mean, your claim is, and the claim of manufacturing evidence, I understand all of that, but I'm struggling with how this is Brady evidence. Brady evidence is, with respect, nobody knew, and the prosecutor didn't know, that she had been paid, that he had taken care of her bond, her $500 bond. That's the equivalent of paying her $500. Here's a drug addict who's in jail for her 13th shoplifting charge, and he takes care of her bond. Yeah, but he was available to the defense to find out all of this stuff. Simply being available is not the essential facts, which is what's required in a Brady defense, that you should have been aware of this. Those aren't the essential facts. The essential facts are the $500 payment and the threats, same threats. With respect to Tyrone- Is there a duty under Brady for somebody to, if they have access to a witness, to inquire of that witness, whether there's any other information that would be helpful to the criminal defendant, such that the prosecutor doesn't have to disclose favorable information to the defendant? No, I think under the ethical rules, the prosecutor has to disclose any type of consideration, and I think it's the Tavara case, I might be wrong, but that due diligence requirement is not necessary. You have to have the essential facts, and with respect to Tammy Wiseman, I think the Brady claim stands by itself as material evidence. It certainly wasn't disclosed, and Tyrone Damore, we'll say that it in itself is a material violation, but remember, the defendant, Tyrone Damore, was jailed, threatened with obstruction of justice, jailed for three days, none of that came out, and didn't show up at trial. She was the alibi witness, not only for Clark, because she was with him that night, but remember under Muldowan, the police and prosecution, the police have to turn over evidence that undermines the state's preferred theory of the crime. The state's preferred theory is that Clark and Harrington are together, so if Clark is with Tyrone Damore- Your claim of what they did, the offer- Oh, Muldowan is 2009, but that's a 2009 case, and I forgot when the conviction was. This was a 2002 case, but certainly they still have to turn over evidence that undermines the state's preferred theory of the crime. So, and this is impeachment evidence, not only is the Barrius Stewart the key witness, because if Clark is with his girlfriend, then Barrius Stewart can't see him, and if Clark is with his girlfriend, then he's not with Harrington, and the theory is Harrington and Clark are together. So it's exculpatory, it's impeachment evidence, and most importantly, I think, is it's the same modus operandi. We threaten with jail, we jail people, we threaten to take your kids, it would have completely destroyed the integrity of the police investigation, and Abdallah in particular. So I think for those reasons, it is clearly material if you look at it in the cumulative sense, and there is, the judge was right, that there is a Brady violation, and for those reasons, I have five seconds, I'll wrap it up with that we would request that the court affirm the denial of qualified immunity. If I can give you a PS, there was no argument in its way that's in my brief with respect to the Brady violations clearly established and the malicious prosecution clearly established argument. Thank you. I'm going to jump to the Brady claim, unless the court has any objection. I want to address the discussion of the Brady claim, and as counsel just said, we failed to disclose the same modus operandi, that we were threatening, coercing these witnesses. But there were also some misrepresentations in there, specifically in regards to the alibi witness. The evidence establishes that Clark filed a notice that she was an alibi witness, that she was there, she was available to testify, there was a statement that she didn't show up to testify, there's no evidence that she wasn't available. His attorney testified in the proceedings before. What's the best case that you would point us to, to say that if a criminal defendant has indicated that they're going to have so-and-so as their witness, that then the prosecution doesn't have to disclose any Brady material regarding that witness, because after all, the criminal defendant could talk to their witness. What's your best case to support that? I would direct the court to the two cases that we cite in our brief, which are Covey Bell 161 F3D 320, and it's a 7th Circuit opinion, Holland v. City of Chicago, where the plaintiff discusses how the criminal defendant has a responsibility to probe a witness, especially when we're talking here about an alibi witness. This would be a really big loophole to Brady to say that any time that a defendant has knowledge of a witness and is indicating a likelihood of calling them, that the prosecution can sit on what otherwise would be Brady material. I think in regards to Weissman and both of them, what they're looking for here, it doesn't even meet the qualifications of Brady material. When we look at what Weissman has testified at some point, I believe it's the fourth trial, when she finally says, oh, I just told them whatever I thought they wanted to hear. I was making this up for Kevin. She's testified multiple different ways, such that it's not even clear what did they want us to disclose. Just the coercion is what they want. What we're saying here is, well, if we weren't even supposed to know that this was coercion, how does this also qualify as Brady material? How are we supposed to know, if we don't know back then that this is coercive, that this constitutes a fabrication, how does that also constitute Brady material? That's been our argument from the start. That's what he's just acknowledged is their position, is that this was all coercive. We should have revealed all of this. To us, there was nothing putting us on notice of that and the need to reveal that. I see that my time has expired. Thank you. Thank you both for your argument and the case to be submitted.